UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____

KAREN DARKE as the Administratrix of the
ESTATE OF JUSTIN C. ZINNO and in her
Individual Capacity as the beneficiary of
JUSTIN C. ZINNO, a deceased seaman

        Plaintiff,

v.                                               Case No.: 1:21-cv- _____

JAMES MATARONAS, in personam,
BRUCE R. MEDEIROS, in personam,
and the f/v SAKONNET LOBSTER II, its
engines, electronics, fishing gear and
permits and appurtenances, in rem

        Defendants.

_____

**VERIFIED COMPLAINT**

Plaintiff Karen Darke as the duly appointed personal representative of the Estate of Justin C. Zinno, a deceased seaman, and in her individual capacity as the natural parent of decedent Justin C. Zinno files this Verified Complaint against Defendants James Mataronas, in personam, Bruce R. Medeiros, in personam, and the f/v SAKONNET LOBSTER II, its engines, electronics, fishing gear and permits and appurtenances in rem, stating as follows:

INTRODUCTION

1.     Justin C. Zinno was 26 years old when his fellow crew recount him being dragged down the deck of a commercial lobstering vessel, sucked over the transom and pulled beneath the water. Worse horrors are tough to imagine and yet it's made more

1

gruesome by the fact Justin likely kept clinging to the fisherman's hope – that the vessel would quickly reverse its hydraulics, wind back the line that trapped him and save his life.  That didn't happen in time.  Justin drowned.

2. Justin was a Rhode Islander, born and raised.  He loved Del's Lemonade, sports, played music and was the kind of young man people liked being around.  His funeral with hundreds in attendance reflected a person loved by the community.

3. This is a picture of Justin.



Image # 1

4. Justin was a commercial fisherman and he was entitled to a safe working environment and a seaworthy vessel neither of which the evidence will show he received.

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff Karen Darke is, and at all times material hereto was, a resident of the Town of Narragansett, Washington County, Rhode Island.

6. Plaintiff Karen Darke is the natural mother of Justin C. Zinno.

7. Plaintiff Karen Darke was appointed the Administratrix of the Estate of Justin C. Zinno in the Probate Court of the Town of Narragansett on December 17, 2020.

8. A true, accurate and complete copy of Plaintiff Karen Darke's Certificate of Appointment is attached hereto as Exhibit "A".

9. As the parent of the decedent and the personal representative of the Estate of Justin C. Zinno, Karen Darke is permitted to bring the Jones Act (46 U.S.C. §§ 30104, *et seq.*) and Unseaworthiness (28 U.S.C. §§ 1333) counts in this action on behalf of decedent Justin C. Zinno's Estate and the Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301, *et seq.* count on behalf of herself as a statutory beneficiary.

10. At all times material hereto, decedent Justin C. Zinno was a resident of the Town of Narragansett, Washington County, Rhode Island.[1]

11. At all times material hereto, Justin was a commercial fisherman.

12. At all times material hereto, Justin was a crewmember in the service of the fishing vessel SAKONNET LOBSTER II ("Vessel").

13. At all times material hereto, Defendant James Mataronas was the owner of the Vessel.

---

[1] This lawsuit is about a person. He had hopes and expectations for his life. He had parents he loved, fond friends and a unique excitement and vigor for life. In this way, this law firm refers to him by his first name, Justin. This use of the decedent's first name is not done casually or with disregard for the seriousness of these proceedings. To the contrary, it's meant to highlight that this lawsuit concerns one of the most serious actions a Court hears on the civil side . . . an action involving the death of a person.

14. Defendant James Mataronas is a resident of Newport County, Rhode Island.

15. On information and belief, Defendant Mataronas is sometimes also known as "James Mataronas III".

16. Defendant Bruce R. Medeiros is identified by the U.S. Coast Guard as the "operator" of the Vessel.

17. Defendant Bruce R. Medeiros is a resident of Bristol County, Massachusetts.

18. The Vessel is approximately fifty-feet (50') in length and was registered with the State of Rhode Island having been assigned registration # RI 6054W.

19. The Defendant identifies the Vessel's "Principal Port" as Tiverton, Rhode Island.

20. A true, accurate and complete copy of the Rhode Island Registration information and the U.S. Coast Guard's "Vessel Critical Profile" for the Vessel is attached hereto as composite Exhibit "B".

21. The Vessel was never documented with the United States Coast Guard and the Coast Guard never issued a Documentation Number to the Vessel.

22. The Vessel is powered by a single engine.

23. At all times material hereto, the Vessel was used for the commercial harvesting of lobsters.

24. This is a picture of the Vessel:



Image # 2

25. The Vessel's home port is located in Rhode Island.

26. On October 14, 2019, the Vessel was not equipped with a satellite telephone.

27. On October 14, 2019, the Vessel did not have a call-sign issued to it by the Federal Communications Commission ("FCC").

28. Defendant Mataronas is a resident of Little Compton, Newport County, Rhode Island.

29. At all times material hereto, Defendant Mataronas owned, operated, managed, manned, maintained and/or controlled the Vessel.

30. At all times material hereto, upon information and belief, Defendant Medeiros operated and/or participated in the operation of the Vessel.

31. On information and belief, Defendant Mataronas held in 2019 and continues to hold Northeast Federal Fishery Permit # 151891.

32. On information and belief, a true, accurate and complete copy of the Northeast Federal Fishery Permit Data for Permit # 151891 is attached as Exhibit "C" with a redaction made of the address and phone number shown therein.

33. Northeast Federal Fishery Permit # 151891 is a limited access permit with restrictions on trap limits, minimum/maximum sizes, gear requirements, closed seasons and locations where traps may be set.

34. On or about October 14, 2019, the Vessel was limited to harvesting lobsters in an area within "Trap Area 3" as specified on its Northeast Federal Fishery Permit # 151891.

35. On or about October 14, 2019, the Vessel was harvesting lobsters for the purpose of selling the lobsters under the trade name "Sakonnet Lobster Co."

36. On information and belief, following Justin's death the in personam Defendants (or either one of them) preserved the Vessel's GPS information recorded by the Vessel's electronics which shows the Vessel's speed and track at the time of Justin's death.

37. "Sakonnet Lobster Co." is not a registered business entity and is a trade name Defendant Mataronas uses to sell lobsters to the public.

38. Defendant Mataronas conducts his business under the trade name "Sakonnet Lobster Co." at 26 California Road, Little Compton, Rhode Island.

39. The property located at 26 California Road, Little Compton, Rhode Island is owned by Gary Mataronas.

40. At all times material hereto, the Vessel docked at 1785 Main Road, Tiverton, Rhode Island.

41. When the Vessel returned to port following Justin's death, it first docked at 1785 Main Road, Tiverton, Rhode Island.

42. The property located at 1785 Main Road, Tiverton, Rhode Island is owned by Gary Mataronas.

43. In or around October 2019 including all times material hereto, Defendant Mataronas employed Justin as crew aboard the Vessel.

44. In or around October 2019 including all times material hereto, Defendant Mataronas agreed to pay Justin remuneration for his work aboard the Vessel.

45. At all times material hereto, Defendant Mataronas was the Jones Act employer of the crew serving aboard the Vessel, including Justin.

46. Venue in this Court is appropriate pursuant to 28 U.S.C. 1391(b)(1)-(2).

47. All conditions precedent for filing this action are satisfied or have been waived.

## GENERAL ALLEGATIONS

48. Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

49. In October 2019, the Vessel was engaged in the business of commercial fishing consisting of offshore lobstering.

50. On or about October 13, 2019, the Vessel departed Rhode Island for a voyage that would take it near the Continental Shelf of the United States ("Voyage").

51. At the time the Vessel started its Voyage, it was laden with, among other things, lobster traps which were stacked on the deck.

52. At the time the Vessel started its Voyage, it was not equipped with an Automatic External Defibrillator.

53. At the time the Vessel started its Voyage, it was not equipped with a medical kit that contained Adrenaline.

54. On information and belief, at the time the Vessel started its Voyage, its crew was not trained on how to medically treat a drowning or near-drowning victim.

55. On information and belief, at the time the Vessel started its Voyage, it was not equipped with a medical kit containing oxygen.

56. On information and belief, at the time the Vessel started its Voyage, Defendant Mataronas had not contracted with a maritime medical service which the Vessel's crew could contact 24/7 for medical advice.

57. On information and belief, at the time the Vessel started its Voyage, Defendant Medeiros had not contracted with a maritime medical service which the Vessel's crew could contact 24/7 for medical advice.

58. On information and belief, on October 14, 2019 the Vessel's crew did not have the contact details for a maritime medical service which they could contact for evaluation of a crewmember suffering an emergency medical situation.

59. At some point during the Voyage and while the Vessel was underway and making way, Justin's fellow crewmembers describe him having been caught in a rope and dragged overboard.

60. At some point during the Voyage and while in the service of the Vessel, Justin suffered severe injuries, pre-death conscious pain and suffering and eventually death.

61. Upon information and belief, Justin's death occurred on the high seas at a location beyond three nautical miles from the shore of the United States.

62. At all times material hereto, the Vessel was in navigable waters.

63. At all times material hereto, Defendants knew or should have known of the facts supporting the negligence asserted herein including the defects in the Vessel.

64. At all times material hereto, Justin exercised due care in the performance of his duties.

## COUNT ONE

**PLAINTIFF'S UNSEAWORTHINESS CLAIM ASSERTED
AGAINST DEFENDANTS JAMES MATARONAS AND F/V SAKONNET LOBSTER II**

65. Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

66. This unseaworthiness cause of action is governed by the federal maritime law of the United States of America.

67. Plaintiff demands a jury trial of the unseaworthiness claim in accordance with the Supreme Court's ruling in <u>Fitzgerald v. United States Lines Co.</u>, 374 U.S. 16 (1962).

68. Plaintiff invokes Supplemental Admiralty Rule C for the limited purpose of arresting the <u>in rem</u> Defendant Vessel and foreclosing a maritime tort lien against the Vessel.

69. Plaintiff has a preferred maritime tort lien against the Vessel for the damages Justin sustained as a direct and proximate result of the Vessel's unseaworthiness.

70. Under the general maritime law, Plaintiff is entitled to foreclose Justin's maritime tort lien against the Vessel.

71. If Defendant Mataronas refuses to post substitute security to stand in lieu of the Vessel's arrest and/or seizure, Plaintiff will seek to arrest and seize the Vessel if she has not already elected to do so.

72. On or about October 14, 2019, Justin was a seaman and a member of the crew of the Vessel, which was in navigable waters.

73. At all material times hereto, Defendant Mataronas owned the Vessel such that he had a non-delegable duty to provide a seaworthy vessel: tight, staunch, strong, and properly or competently manned, equipped, and supplied, and fit and proper for the service in which it was engaged.

74. The unseaworthiness of the Vessel occurred in whole or in part while the Vessel was on the high seas.

75. On or about October 14, 2019, the Vessel was unseaworthy by reason of the following:

    a. Vessel lacked safe and proper appliances;

    b. Vessel not properly manned;

    c. Vessel not properly supplied, provisioned and/or equipped;

    d. Vessel not properly maintained,

    e. Vessel lacked safety rules or adequate safety rules and practices including, but not limited to, rules and practices to eliminate or reduce the risk of rope entanglements and crew overboard incidents;

    f. Vessel improperly loaded with traps;

    g. Vessel lacked a safe layout, design and/or construction;

    h. Vessel lacked safe equipment and/or fishing gear;

    i. Vessel lacked adequate communications systems given the circumstances;

    j. Vessel lacked appropriate medical kit and/or medical resources;

    k. Vessel lacked adequate supervision and/or instruction and

    l. Other and/or different defects as may be shown at trial.

76. As a result of the Vessel's unseaworthiness, Justin suffered agonizing physical and mental anguish, suffered drowning injuries and died.

77. Justin's agonizing physical and mental anguish, drowning injuries and death were not caused by any fault on his part, but were a direct result of or a reasonable probable consequence of the Vessel's unseaworthiness.

78. Justin was in the scope of his employment as a seaman at the time he sustained his agonizing physical and mental anguish, drowning injuries and death.

79. At all times material hereto, Defendants knew or should have known of the facts supporting the unseaworthiness asserted herein including the defects in the Vessel.

WHEREFORE, Plaintiff moves the Court to provide the following relief:

a.  Issuance of an Order citing all persons having or claiming an interest in the Vessel to file a Claim of Interest and an Answer in this action;

b.  Issuance of an Order directing the Clerk of Court to issue a warrant of arrest in rem for the Vessel, and order the U.S. Marshal to arrest the Vessel so it is brought within the Court's jurisdiction;

c.  Declare that Plaintiff has a preferred maritime tort lien against the in rem Defendant Vessel to pay damages;

d.  Issuance of an Order instructing the Clerk of Court to accept a check from Defendant Mataronas so that the money necessary to bond the Vessel from arrest is deposited into the Court's registry;

e.  Entry of final judgment in favor of Plaintiff awarding all allowable damages in an amount not less than $5,000,000.00 together with interest including prejudgment interest and costs against the in rem Defendant Vessel and the in personam Defendant James Mataronas, jointly and severally;

f.  Issuance of an Order directing the U.S. Marshal to sell the Vessel and allowing Plaintiff to credit bid up to the full amount of the judgment as part of the maritime lien foreclosure process;

g.  Alternatively, in the event Defendant James Mataronas posts substitute security, that the Court issue an Order directing the Clerk of Court to pay the substitute security to Plaintiff to help satisfy his judgment; and,

h.  For the Court to award such other and further relief it deems just and proper.

COUNT TWO

**PLAINTIFF'S JONES ACT NEGLIGENCE CLAIM FOR
FAILURE TO PROVIDE A REASONABLY SAFE PLACE
TO WORK ASSERTED AGAINST DEFENDANT JAMES MATARONAS**

80. Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

81. Plaintiff demands a jury trial as allowed for under the Jones Act.

82. At all times material hereto, Justin was a seaman and a member of the crew of the Vessel, which was in navigable waters.

83. At all times material hereto, Justin was working in the service of the Vessel.

84. At all times material hereto, Justin was employed by Defendant Mataronas.

85. At all times material hereto, Defendant Mataronas owed Justin a duty of reasonable care to provide him with a safe place to work.

86. Defendant Mataronas is vicariously liable for the acts and omissions of the Vessel's captain and crew.

87. In addition and/or in the alternative, Defendant Mataronas is vicariously liable for the acts and omissions of Defendant Medeiros.

88. On October 14, 2019, Defendant Mataronas breached his duty of reasonable care because of one or more of the following acts or omissions:

      a. Failure to use reasonable care to provide Justin a safe place to work;

      b. Failure to use reasonable care to provide and maintain a safe place to work for Justin, fit with proper and adequate machinery, electronics, crew and equipment;

c. Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees and more particularly Justin, while engaged in the course of his employment on the Vessel;

d. Failure to properly man the Vessel;

e. Failure to use reasonable care to provide Justin with a safe place to work by failing to prevent entanglements with rope and crew-overboard incidents;

f. Failure to use reasonable care to inspect the Vessel, its equipment, and its fishing gear;

g. Failure to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the Vessel was reasonably safe;

h. Failure to use reasonable care to promulgate and/or enforce adequate policies and procedures to conduct shipboard activity in a manner so as to minimize rope entanglements and crew-overboard instances;

i. Failure to adequately safeguard for the risks associated with drowning including, but not limited to, safeguarding against rope entanglements and crew-overboard incidents;

j. Failure to undertake reasonable voyage planning including a failure to undertake reasonable voyage planning consistent with the industry;

k. Failure to provide adequate training, instruction, and supervision to crewmembers and Justin;

l. Failure to provide prompt, proper and adequate medical care which aggravated Justin's injuries and caused him additional pain, disability, suffering and death;

m. Failure to have proper and adequate procedures in effect with respect to providing medical care to the Vessel's crew and Justin including resuscitative care;

n. Failure to follow sound management practices with the goal of providing Justin a safe place to work;

o. Failure to investigate the hazards to crew members and then take

        the necessary steps to eliminate the hazards, minimize the hazards and/or warn Justin of the dangers from the hazards;

    p.    Failure to promulgate and/or enforce adequate rope-entanglement, crew-overboard and crew-recovery policies and procedures;

    q.    Failure to provide adequate equipment to implement rope-entanglement and crew-overboard and crew-recovery policies and procedures and

    r.    Failure and negligence in other respects as will be shown at trial.

89. Defendant Mataronas knew of the foregoing conditions causing Justin's death and did not correct them, or the conditions existed for a sufficient length of time such that he in the exercise of reasonable care, should have learned of and corrected them.

90. As a result of Defendant Mataronas', his employees' and/or his agents' negligence, Justin suffered agonizing physical and mental anguish, drowning injuries and died.

91. Justin was in the scope of his employment as a seaman at the time he suffered agonizing physical and mental anguish, drowning injuries and died.

92. Justin's serious injuries and death were not caused by any fault on his part, but were caused by Defendant Mataronas and his employees and/or agents.

WHEREFORE Plaintiff demands entry of judgment against Defendant James Mataronas for all damages as allowed under the Jones Act, 46 U.S.C. §§ 30104, *et seq.*, including but not limited to loss of support, past and future earnings, loss of services, pre-death pain and suffering and funeral expenses; and all other damages allowable by law in an amount not less than $5,000,000.00.

## COUNT THREE

### DEATH ON THE HIGH SEAS ACT CLAIM ASSERTED
### AGAINST DEFENDANT JAMES MATARONAS AND BRUCE R. MEDEIROS

93. Plaintiff reasserts and realleges all of the preceding allegations as if set out in full herein.

94. The Death on the High Seas Act ("DOHSA"), 46 U.S.C. §§ 30301, *et seq.*, permits a decedent's personal representative to make a claim for the wrongful death of a seaman based upon a wrongful act, neglect or default.

95. During the time frame in which Justin was aboard the Vessel and on the high seas beyond three nautical miles from the shore of the United States, Defendant Mataronas' and Defendant Medeiros' wrongful acts, neglect and/or default including the unseaworthiness of the Vessel caused Justin agonizing physical and mental anguish, drowning injuries and death, including pre-death conscious pain and suffering.

96. Defendant Mataronas' wrongful acts, neglect and default include the following:

   a. Failure to use reasonable care to provide Justin a safe place to work;

   b. Failure to use reasonable care to provide and maintain a safe place to work for Justin, fit with proper and adequate machinery, electronics, crew and equipment;

   c. Failure to promulgate and enforce reasonable rules and regulations to ensure the safety and health of the employees and more particularly Justin, while engaged in the course of his employment on the Vessel;

   d. Failure to properly man the Vessel;

   e. Failure to use reasonable care to provide Justin with a safe place to work by failing to prevent entanglements with rope and crew-overboard incidents;

   f. Failure to use reasonable care to inspect the Vessel, its equipment,

and its fishing gear;

g. Failure to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the Vessel was reasonably safe;

h. Failure to use reasonable care to promulgate and/or enforce adequate policies and procedures to conduct shipboard activity in a manner so as to minimize rope entanglements and crew-overboard instances;

i. Failure to adequately safeguard for the risks associated with drowning including, but not limited to, safeguarding against rope entanglements and crew-overboard incidents;

j. Failure to undertake reasonable voyage planning including a failure to undertake reasonable voyage planning consistent with the industry;

k. Failure to provide adequate training, instruction, and supervision to crewmembers and Justin;

l. Failure to provide prompt, proper and adequate medical care which aggravated Justin's injuries and caused him additional pain, disability, suffering and death;

m. Failure to have proper and adequate procedures in effect with respect to providing medical care to the Vessel's crew and Justin including resuscitative care;

n. Failure to follow sound management practices with the goal of providing Justin a safe place to work;

o. Failure to investigate the hazards to crew members and then take the necessary steps to eliminate the hazards, minimize the hazards and/or warn Justin of the dangers from the hazards;

p. Failure to promulgate and/or enforce adequate rope-entanglement, crew-overboard and crew-recovery policies and procedures;

q. Failure to provide adequate equipment to implement rope-entanglement and crew-overboard and crew-recovery policies and procedures and

r. Wrongful acts, neglect and default in other respects as will be shown at trial.

97. Defendant Medeiros' wrongful acts, neglect and default include a failure to operate the Vessel with due regard for the safety of its crew including, but not limited, to Justin's safety.

98. Defendant Mataronas is vicariously liable for the acts and omissions of the Vessel's captain and crew.

99. In addition and/or in the alternative, Defendant Mataronas is vicariously liable for the acts and omissions of Defendant Medeiros.

100. The wrongful acts, neglect and default of Defendant Mataronas and Defendant Medeiros were a direct, proximate and legal cause of Justin suffering severe injuries, pre-death conscious pain and suffering and eventually death.

101. As a result of the wrongful acts, neglect and default of Defendant Mataronas and Defendant Medeiros, Plaintiff sustained pecuniary losses and she makes claim for fair compensation for all of her pecuniary losses.

WHEREFORE, Plaintiff demands judgment against Defendant James Mataronas and Defendant Bruce R. Medeiros, jointly and severally, for all damages as allowed under the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.*, demands a trial by jury for all issues so triable, and/or an advisory jury pursuant to the savings to suitors clause of 28 USC § 1333, and any other relief this Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

// Signature Page Follows //

Dated: April 6, 2021
Newport, Rhode Island

                                                            Fulweiler llc

By:    /s/ John K. Fulweiler

                John K. Fulweiler, Esq. (RI-7876)
W.B. Franklin Bakery Building
40 Mary Street
Newport, RI 02840
(401) 667-0977 – Telephone
(401) 646-2501 – Facsimile
john@saltwaterlaw.com
www.saltwaterlaw.com
1-800-383-MAYDAY
*Attorneys for Plaintiff*

-- Of Counsel –

Edward G. Lawson, Jr.
Nicholas A. DaSilva, Esq.
c/o Law Offices of Edward G. Lawson, Jr.
260 Lonsdale Avenue
Pawtucket, RI 02860
*Attorneys for Plaintiff*